## UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH DAKOTA

| | |
|---|---|
| Minnesota Office Plaza LLC, a Minnesota Limited Liability Company, <br><br>         Plaintiff, <br><br> v. <br><br> Dlorah, Inc., a South Dakota Corporation d/b/a National American University; Park West, LLC, a South Dakota Limited Liability Company; Ronald Shape; and Robert Buckingham as Trustee of the Robert D. Buckingham Living Trust, <br><br>         Defendants. | Civil Action No. __21-5061__ <br><br><br> **COMPLAINT** |

Plaintiff Minnesota Office Plaza LLC ("Plaintiff"), for its Complaint against Defendants Dlorah, Inc., d/b/a National American University ("Dlorah"), Park West, LLC ("Park West"), Ronald Shape ("Mr. Shape"), and Robert Buckingham as Trustee of the Robert D. Buckingham Living Trust ("the Buckingham Trust") (collectively "Defendants") states and alleges as follows:

### <u>THE PARTIES</u>

1.    Plaintiff is a Minnesota limited liability company with its principal place of business located at 1625 Energy Park Drive, Suite 100, St. Paul, Minnesota 55108, and each of its members resides in the State of Minnesota. As alleged in more detail below, Plaintiff owns certain commercial real estate that is located at 1500 West Highway 36, Roseville, Minnesota 55113.

2.    Dlorah is a South Dakota corporation with its principal place of business located at 5301 Mount Rushmore Road, Rapid City, South Dakota 57701. At all relevant times, Dlorah has owned and operated National American University ("NAU").

3.      Park West is a South Dakota limited liability company with its principal place of business located at 6150 Laredo Lane, Black Hawk, South Dakota 57718.  On information and belief, all members of Park West are residents of South Dakota or have their principal place of business in South Dakota.

4.      Mr. Shape is an individual who, on information and belief, is and has been a resident of Black Hawk, South Dakota and has been the President and CEO of Dlorah at all times relevant to this Complaint.

5.      On information and belief, Robert Buckingham is the Trustee of the Buckingham Trust, a trust established under South Dakota law.  On information and belief, Robert Buckingham is and has been a resident of Rapid City, South Dakota at all times relevant to this Complaint. Robert Buckingham has served as the President and Chairman of NAU's Board of Directors at various times and, on information and belief, is the majority owner and stockholder of Dlorah's parent company, National American University Holdings, Inc. ("NAU Holdings").

## JURISDICTION AND VENUE

6.      This Court has diversity jurisdiction over this civil action pursuant to 28 U.S.C. § 1332 because Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7.      This Court has personal jurisdiction over Defendants as each has substantial and continuous business contacts in the State of South Dakota.

8.      Venue is proper in this Court because the cause of action arose, at least in part, in South Dakota, and Defendants reside or regularly conduct business in South Dakota.

3529672.v2

## FACTUAL BACKGROUND

### *Plaintiff Leases the Premises to Dlorah*

9.      At all relevant times, Plaintiff has owned certain commercial real estate located at 1500 West Highway 36, Roseville, Minnesota 55113 ("the Premises").

10.     On or around June 8, 2000, Plaintiff and Dlorah entered into an Office Lease Agreement (as amended, the "Lease"), under which Plaintiff, as landlord, leased to Dlorah approximately 14,748 square feet of rentable commercial space located within the Premises for a twelve (12) year term.

11.     Plaintiff and Dlorah subsequently entered into a First Lease Amendment on or around October 13, 2005, and a Second Amendment to Office Lease Agreement on or around April 20, 2012, which amended certain terms of the Lease, including extending the term of the Lease to August 31, 2024.

12.     NAU is a private, regionally accredited, multi-campus higher learning institution that offers degree programs in a variety of disciplines.

13.     Dlorah operated a NAU campus at the Premises from the commencement of the Lease in August 2000 through approximately April 2019.

14.     Dlorah closed its campus at the Premises, as well as many other of its other campus locations throughout Minnesota and other states through the spring and early summer of 2019.

15.     These campus closures were made as part of a shift in NAU's business model to switch from in-person learning to an online teaching platform.

16.     Since June 2020, NAU has only offered online courses to its students.

3529672.v2

17.     Dlorah's CEO Ronald Shape said at the time that "[h]aving facilities with virtually no students in them didn't make sense," and that students prefer "online education so that's what we're positioning ourselves for."[1]

18.     The campus closures were also made during a time period in which Dlorah was experiencing significant financial difficulty and decreases in revenue.

19.     Dlorah's parent company, NAU Holdings, filed a Form 10-K with the Securities Exchange Commission for the fiscal year ending on May 31, 2019.  In this 10-K filing, NAU Holdings and Dlorah disclosed their dire financial situation.

20.     For example, the Form 10-K states that enrollment at NAU had dropped 41.3% in the past year, from 5,648 students as of May 31, 2018, to 3,313 students as of May 31, 2019.

21.     The Form 10-K also states that total revenue declined 31.2% in the past year, from $77.2 million for the fiscal year ending on May 31, 2018, to $53.1 million for the fiscal year ending on May 31, 2019.  Income before income tax for the fiscal year ending on May 31, 2019 was an eye-popping loss of $25.1 million.

22.     On or around January 2019, NAU Holdings voluntarily delisted from the Nasdaq Global Market and transferred its listing to the Over the Counter Quotation Bureau ("OTCQB") Market.  The delisting and transfer were the result of, among other things, Dlorah's declining market value and financial difficulties.

***Plaintiff Evicts Dlorah from the Premises in April 2019***

23.     On or around April 16, 2019, Plaintiff sent Dlorah a notice of default letter notifying Dlorah of its failure to timely pay Thirty-Nine Thousand, Five Hundred Fifty-Five and 68/100

---

[1] *See* https://www.argusleader.com/story/news/business-journal/2019/03/25/national-american-university-sioux-falls-close-classes-shift-online/3266588002/.

Dollars ($39,555.68) in monthly base rent, operating expenses, and other amounts that were then due under the Lease.

24.     Dlorah failed to pay this past due balance within five (5) days of Plaintiff's April 16, 2019 notice of default letter and was therefore in default of the Lease.

25.     On April 24, 2019, Plaintiff commenced an eviction action against Dlorah in Ramsey County District Court, Minnesota, which was subsequently assigned Case No. 62-HG-CV-19-852, based on Dlorah's default under the Lease ("the Eviction Action").

26.     On May 16, 2019, Plaintiff and Dlorah entered into a Settlement Agreement in connection with the Eviction Action whereby Dlorah agreed to surrender possession of the Premises on or before May 23, 2019.  Dlorah was represented by outside counsel in connection with the Eviction Action and the Settlement Agreement.

27.     Dlorah failed to remove all personal property from and surrender the Premises before May 23, 2019.

28.     Plaintiff agreed to extend this deadline to May 31, 2019, but Dlorah still failed to comply with the Settlement Agreement.

29.     Accordingly, on June 6, 2019, a Writ of Recovery of Premises was entered in the Eviction Action and Dlorah was subsequently evicted from the Premises.

### *Plaintiff Commences a Collections Lawsuit Against Dlorah in August 2019*

30.     Pursuant to the terms of the Lease, upon Dlorah's default, Plaintiff is entitled to recover from Dlorah all damages incurred by Plaintiff as a direct and proximate result of Dlorah's default, including, but not limited to, any past due rent and operating expenses, the cost of recovering possession of the Premises, any expenses of reletting the Premises, and Plaintiff's reasonable attorneys' fees and expenses.

3529672.v2

31.     In addition, the Lease allows Plaintiff to accelerate all monthly rent due for the remainder of the Lease term and declare such amount to be due and payable immediately.

32.     On August 17, 2019, Plaintiff served a Summons and Complaint ("the Collections Complaint") on Dlorah asserting a claim for breach of the Lease, among other claims.

33.     The Collections Complaint alleged that under the Lease Dlorah then owed Plaintiff the sum of $2,303,722.54 in past due monthly rent and operating expenses, accelerated rent through the end of the Lease term, and late fees.

34.     Additionally, the Collections Complaint sought to recover all other damages incurred as a result of Dlorah's breach of the Lease, including all expenses incurred in connection with Plaintiff removing Dlorah's abandoned personal property from the Premises, cleaning and repairing the Premises, and Plaintiff's attorneys' fees and expenses.

35.     On or around October 1, 2019, Plaintiff filed the Summons and Complaint in Ramsey County District Court, Minnesota, which was subsequently assigned case number 62-CV-19-6949 ("the Collections Lawsuit").

36.     Dlorah defended against the Collections Lawsuit by filing an Answer to the Collections Complaint on October 3, 2019.   Plaintiff and Dlorah subsequently engaged in significant discovery in connection with the claims and defenses asserted in the Collections Lawsuit.

37.     On September 30, 2020, the Ramsey County District Court issued an Order that granted summary judgment in Plaintiff's favor on its breach of Lease claim and held that Plaintiff was entitled to a judgment against Dlorah for all past due rent, all accelerated rent through the end of the Lease term, attorneys' fees, and other expenses incurred as a result of Dlorah's breaches of the Lease.

3529672.v2

38.     Following additional motion practice, on or around March 9, 2021, the Ramsey County District Court entered judgment in Plaintiff's favor and against Dlorah in the total amount of $2,801,326.66 ("the Judgment").

39.     Dlorah has never filed an appeal to the Court of Appeals of Minnesota in connection with the Judgment, the summary judgment order, or any other order entered in the Collections Lawsuit.

### *Dlorah and Its Top Leadership Concoct and Execute a Scheme to Transfer $12M+ in Real Estate from Dlorah to Park West in Order to Avoid Creditors*

40.     When Dlorah elected to close all of its physical campus locations and move to an online-only teaching model, Dlorah understood and knew that this decision would create liability for Dlorah, as the landlords who owned the numerous leased campuses would assert claims that Dlorah breached the various leases that were in place.

41.     Moreover, Dlorah understood and knew that at least some of these leases included terms that allowed the landlord to recover accelerated rent, as Plaintiff's Lease with Dlorah provides, and that these accelerated rent provisions created millions of dollars in potential liability to Dlorah.

42.     Indeed, in a Quarterly Report for the quarter ending on November 30, 2019, NAU Holdings and Dlorah's consolidated balance sheet identifies a liability of $5,649,000 in "Lease Acceleration Payable, Net of Current Portion" as of May 31, 2019.

43.     As of August 17, 2019 – the date Plaintiff served the Summons and Collections Complaint on Dlorah – Dlorah was aware that Plaintiff sought to recover at least $2,303,722.54 in damages from Dlorah, $2,108,965.20 of which was accelerated rent from September 2019 through the end of the Lease term of August 2024.

3529672.v2

44.     On information and belief, during this same time period, Dlorah was defending a number of other lawsuits from present or former NAU students and other third parties.   These lawsuits presented additional liability risk for Dlorah.

45.     Prior to August 2019, Dlorah owned a significant amount of real estate located in or around Rapid City, South Dakota (collectively "Dlorah's Real Estate").   The majority of Dlorah's Real Estate consisted of apartment and condominium buildings (e.g., the Doral Apartments, the Park West Apartments, the Arrowhead View Apartments, the Vista Park Apartments, and Fairway Hills).

46.     On or around September 11, 2017, Dlorah obtained an appraisal from Shaykett Appraisal Company, Inc., which valued Dlorah's Real Estate at $12,388,000 as of June 6, 2017.

47.     On information and belief, the value of Dlorah's Real Estate has increased since the 2017 appraisal.

48.     Given Dlorah's dire financial condition during at least the 2019 to 2020 time period, Dlorah knew that it was unlikely to have sufficient cash to satisfy any adverse judgment entered in connection with any claims asserted by landlords, students, or other parties.

49.     Dlorah also knew that its creditors would then focus on its largest remaining and most easily identifiable collectible asset – Dlorah's Real Estate – to satisfy any judgment.

50.     Dlorah and its top leadership, including but not limited to Mr. Shape and Mr. Buckingham, concocted a scheme to prevent this from happening.   They did so by collaborating to strip Dlorah of its significant real estate assets by "selling" that real estate to Park West, an entity formed and controlled by Dlorah and that very same leadership.

3529672.v2

51.     This scheme, as alleged in more detail below, was a blatant attempt to move and shield these assets from collection, and these transactions amount to fraudulent transfers in violation of South Dakota law.

52.     This scheme was concocted and executed with the express purpose of benefiting Dlorah, Mr. Shape, and the Buckingham Trust (the three members of Park West) by ensuring, among other things, that Dlorah's Real Estate would not be subject to collection and foreclosure by Dlorah's creditors.

53.     Moreover, as alleged in more detail below, Dlorah did not receive reasonably equivalent value in exchange for conveying Dlorah's Real Estate to Park West, thereby providing an immediate and direct benefit to the members of Park West (Dlorah, Mr. Shape, and the Buckingham Trust).  Additionally, by moving Dlorah's Real Estate to Park West, the members of Park West have been able to continue to own and operate the apartment and condominiums and benefit from the income that is derived from that business.

54.     On or around August 1, 2019 – only months after Dlorah abandoned the Premises and closed its other campus locations – Park West filed Articles of Organization with the South Dakota Secretary of State.

55.     The Articles of Organization list Park West's street and mailing addresses as 6150 Laredo Lane, Black Hawk, South Dakota 57718-9348.  On information and belief, 6150 Laredo Lane is the home address of Dlorah's longtime CEO, Mr. Shape.

56.     The Articles of Organization also state that Mr. Shape is the organizer and registered agent of Park West.

9

57.     On or around July 27, 2020, Park West filed an Annual Report with the South Dakota Secretary of State that states Park West is a manager-managed limited liability company and identifies Debbie Buckingham as the manager.

58.     On information and belief, at all relevant times, Debbie Buckingham has served as a member of Dlorah's Board of Directors and is employed by NAU as a business manager in its real estate department.  She is also the daughter of Robert Buckingham.

59.     On or around October 5, 2020, Park West filed an Amended Annual Report that identifies Mr. Shape as one of the "principal officers and directors" of Park West.

60.     The present members of Park West are: (1) Mr. Shape; (2) the Robert D. Buckingham Living Trust; and (3) Dlorah.

61.     Dlorah holds a 1/3 ownership interest in Park West and, on information and belief, Mr. Shape and the Robert D. Buckingham Living Trust each hold the remaining 1/3 ownership interests.

62.     Additionally, 1196 Stone Cir LLC, a Texas limited liability company, was at one time also a member of Park West.  Edward Buckingham, a member of Dlorah's Board of Directors, is the registered agent for 1196 Stone Cir LLC and, on information and belief, is a member and owner of this entity.

63.     Based on the above facts, Park West is an entity that was formed, owned, and controlled by Dlorah and its top leadership.

64.     On information and belief, the sole purpose in establishing and operating Park West is to own and hold Dlorah's Real Estate, as described in the transactions set forth below, and Park West has no other business operations.

3529672.v2

### *The 2019 Fraudulent Real Estate Transaction*

65.    On August 27, 2019, Dlorah and Park West entered into a three-page "Real Estate Purchase Agreement" (the "2019 Purchase Agreement") pursuant to which Dlorah "sold" a portion of Dlorah's Real Estate to Park West.

66.    The 2019 Purchase Agreement was executed just ten (10) days after Dlorah was served with the Summons and Complaint in the Collections Lawsuit.

67.    The specific real estate subject to the 2019 Purchase Agreement was: (1) the Park West Condominiums located at 3949 Fairway Hills Drive, Rapid City, South Dakota 57702; and (2) the Fairway Hills Party House located at 3999 Fairway Hills Drive, Rapid City, South Dakota 55702, as reflected in the below real estate descriptions:

---

Parcel 1 (a/k/a Park West Condominiums, 3949 Fairway Hills Drive, Rapid City SD 57702)
Units 3941, 3942, 3943, 3944, 3945, 3946, 3948, 3951, 3952, 3953, 3954, 3955, 3956, 3957, 3958, 3961, 3962, 3963, 3964, 3965, 3967, 3968, 3971, 3972, 3973, 3975, 3976, 3977, 3978, 3981, 3982, 3983, 3984, 3986, 3988, 3991, 3992, 3994, 3996 and 3998 of Park West Condominiums at Fairway Hills in the City of Rapid City, Pennington County, South Dakota, according to the Master Deed recorded July 13, 2007, in Book 171, Page 3945 and to the First Amendment to the Master Deed recorded August 3, 2007, in Book 172, Page 291; TOGETHER with a one forty-eighth undivided interest in the Common Areas and facilities appurtenant to each Unit, all as set forth in, and subject to, said Master Deed and Exhibits attached thereto;

– and –

Parcel 2 (a/k/a Fairway Hills Party House, 3999 Fairway Hills Drive Rapid City SD 57702)
Lot 30 of Fairway Hills P.R.D. in the City of Rapid City, Pennington County, South Dakota, as shown on the plat filed in Plat Book 19, Page 124 in the office of the Register of Deeds of Pennington County, South Dakota.

---

68.    The purchase price set forth in the 2019 Purchase Agreement was $3,000,000.

3529672.v2

69.     The 2019 Purchase Agreement generously granted Dlorah an exclusive two-year option to buy back either or both of the parcels. The option has now expired and, on information and belief, was not exercised by Dlorah.

70.     The 2019 Purchase Agreement was signed on behalf of Dlorah by Thomas Bickart, its Chief Financial Officer, and on behalf of Park West by Mr. Shape as its "Manager and Member."

71.     Pursuant to the terms of the 2019 Purchase Agreement, the closing on this real estate transaction closed on August 30, 2019, a mere three days after the 2019 Purchase Agreement was executed.

### The 2020 Fraudulent Real Estate Transaction

72.     On April 14, 2020, Dlorah and Park West entered into a three-page "Real Estate Purchase Agreement" (the "2020 Purchase Agreement," and collectively with the 2019 Purchase Agreement, the "Real Estate Transfers"), by which Dlorah "sold" the remaining portions of Dlorah's Real Estate to Park West.

73.     The 2020 Purchase Agreement transferred the following portions of Dlorah's Real Estate from Dlorah to Park West:

---

**Parcel 1**
Lot 1 of Fairway Hills P.R.D. in the City of Rapid City, Pennington County, South Dakota, as shown on the plat filed in Plat Book 14, Page 259, excepting therefrom Lot H1 of said Lot 1, as shown on the plat filed in Highway Plat Book 10, Page 20 in the office of the Register of Deeds of Pennington County, South Dakota; and

**Parcel 2**
Lot 2 of Fairway Hills P.R.D. in the City of Rapid City, Pennington County, South Dakota, as shown on the plat filed in Plat Book 15, Page 215, excepting therefrom Lot H1 of said Lot 2, as shown on the plat filed in Highway Plat Book 8, Page 7, and amended plat filed in Highway Plat Book 8, Page 40 in the office of the Register of Deeds of Pennington County, South Dakota; and

---

12

**Parcel 3**

Tract G Revised, Tract H Revised and Lot 1 Revised of Tract I of Arrowhead View Addition to the City of Rapid City, Pennington County, South Dakota, as shown on the plat filed in Document No. A201512192 in the office of the Register of Deeds of Pennington County, South Dakota; and

**Parcel 4**

Units 4103, 4105, 4107, 4109, 4111, 4113, 4115, 4117, 4123, 4125, 4127, 4129, 4131, 4133, 4135, 4137, 4143, 4145, 4147, 4149, 4151, 4153, 4155 and 4157 in Building 2 and Storage Units A, B, C, D, E, F and G in Building 2; Units 4203, 4205, 4207, 4209, 4211, 4213, 4215, 4217, 4223, 4225, 4227, 4229, 4231, 4233, 4235, 4237, 4243, 4245, 4247, 4249, 4251, 4253, 4255 and 4257 in Building 3 and Storage Units A, B, C, D, E, F and G in Building 3 and Garage Units 1G, 26G and 27G in Building 3; Units 4303, 4305, 4307, 4309, 4311, 4313, 4315, 4317, 4323, 4325, 4327, 4329, 4331, 4333, 4335, 4337, 4343, 4345, 4347, 4349, 4351, 4353, 4355 and 4357 in Building 4 and Storage Units A, B, C, D, E, F and G in Building 4 of Vista Park Condominiums at Fairway Hills in the City of Rapid City, Pennington County, South Dakota, according to the Master Deed recorded April 24, 2008, in Book 179, Pages 3812 through 3874 in the office of the Register of Deeds of Pennington County, South Dakota, together with the undivided interest in the Common Areas and Facilities and in the Limited Common Area appurtenant to each Unit, all as set forth in, and subject to, said Master Deed and Exhibits attached thereto; and

**Parcel 5**

Lot 5A in Block 2 of Fairway Hills P.R.D. in the City of Rapid City, Pennington County, South Dakota, as shown on the plat filed in Plat Book 25, Page 38 in the office of the Register of Deeds of Pennington County, South Dakota.

74.     The closing date on the 2020 Purchase Agreement was set for May 31, 2020, but, on information and belief, the transaction actually closed on or around August 12, 2020.

75.     The 2020 Purchase Agreement was executed and closed while Plaintiff and Dlorah were actively litigating the Collections Lawsuit.  For example, the 2020 Purchase Agreement was executed just weeks before Dlorah's CFO, Thomas Bickart, was deposed on May 12, 2020, and weeks before Plaintiff and Dlorah participated in a mediation on May 19, 2020.

76.     The closing on the 2020 Purchase Agreement occurred less than two weeks after the July 30, 2020 hearing on Plaintiff's Motion for Summary Judgment in the Collections Lawsuit, where Plaintiff ultimately requested and obtained a $2.8M+ judgment against Dlorah.

77.     At no point during the Collections Lawsuit did Dlorah or its counsel ever inform Plaintiff and its counsel that Dlorah was entering into or had entered into the 2019 Purchase Agreement, the 2020 Purchase Agreement, or otherwise effectuated these Real Estate Transfers.

78.     The purchase price set forth in the 2020 Purchase Agreement was $8,080,000.

79.     Therefore, the total purchase price for the Real Estate Transfers was $11,080,000. This is despite the fact that the 2017 appraisal valued these properties at $12,388,000, a difference of $1,308,000.

80.     Similar to the 2019 Purchase Agreement, Mr. Shape executed the 2020 Purchase Agreement on behalf of Park West as its "Manager and Member," and Thomas Bickart executed it on behalf of Dlorah.

81.     On information and belief, Park West did not have sufficient funds or assets to cover the $8,080,000 purchase price set forth in the 2020 Purchase Agreement.

82.     Therefore, on or around August 12, 2020, Park West entered into a Promissory Note in favor of Dlorah, whereby Park West agreed to pay Dlorah the sum of $2,080,000 ("the Promissory Note").

83.     The Promissory Note has extremely favorable terms and demonstrates that this was not an arms' length transaction.

84.     For example, the Promissory Note states that Park West is not required to pay any interest on the principal balance as is typical in any arms' length lending agreement; Park West is not required to make any monthly, quarterly, or other periodic payment as is typical in any arms' length lending agreement; and the only time payment is ever due to Dlorah is a single balloon payment on June 1, 2024.

14

85.     Given that Dlorah and its top leadership are on both sides of this transaction, they could easily agree to amend the Promissory Note to extend the maturity date of June 1, 2024 to whatever future date they desire.

86.     Effectively, Dlorah "sold" $8M+ in real estate to Park West, transferred the real estate to Park West in August 2020, but will not receive $2,080,000 of the purchase price until June 1, 2024 (or later if Dlorah and Park West agree to further push out the maturity date).

87.     Stated differently, Dlorah and its top leadership transferred millions of dollars of real estate to an entity that they own and control at a price that was far less than reasonably equivalent value; did so in order to prevent Dlorah's Real Estate from being subject to collection from Dlorah's creditors, including Plaintiff whose summary judgment motion was then pending; and structured the transaction so that Dlorah would not actually receive the full purchase price and value of the property until many years later, if ever.

### Plaintiff Seeks to Collect on the Judgment

88.     Following entry of the Judgment, Plaintiff commenced post-judgment proceedings and collection efforts against Dlorah.

89.     Among other things, Plaintiff has attempted to garnish Dlorah's bank accounts with limited success.  For example, in May 2021, Plaintiff garnished Dlorah's account at Great Western Bank and was only able to recover $952.52.  Plaintiff later garnished Dlorah's accounts and Great Western Bank and Black Hills Federal Credit Union and was able to garnish approximately $23,000 in additional funds.

90.     Plaintiff has also served post-judgment written discovery on Dlorah.  In its responses, Dlorah identified numerous bank accounts it maintains.  Its operating accounts have only a few thousand dollars in funds, nowhere near the amount sufficient to satisfy the Judgment.

91.     Dlorah has several other accounts with balances in the millions of dollars, but has asserted that such accounts are not subject to garnishment because they purportedly are "federal funds depository accounts" under Title IV and the Higher Education Act.

92.     Dlorah's post-judgment written discovery responses do not identify any other significant collectible assets and demonstrate that Dlorah has made every effort to liquidate any assets it did own, including selling several private airplanes and vehicles in 2018 through 2020.

93.     As of the date of this Complaint, Dlorah has not paid the Judgment in full and has made no contact or proposal to Plaintiff to arrange for the timely payment of the Judgment.

94.     Had Dlorah not fraudulently transferred Dlorah's Real Estate to Park West, those assets would be subject to foreclosure and collection efforts from Plaintiff.  Dlorah moved those assets to Park West in a blatant and illegal attempt to avoid that from happening.

**COUNT ONE**
**ACTUAL FRAUDULENT TRANSFER AGAINST ALL DEFENDANTS**
**SDCL § 54-8A-4(a)(1)**

95.     Plaintiff repeats, restates and realleges the allegations of Paragraphs 1 through 94 of this Complaint as if fully set forth herein.

96.     Dlorah and Park West, by and through their leadership and members, primarily Dlorah's CEO Mr. Shape and Mr. Buckingham, concocted and executed a scheme to move Dlorah's Real Estate from Dlorah to Park West with the actual intent to hinder, delay, and defraud Plaintiff and Dlorah's other creditors.

97.     Dlorah, Mr. Shape, and the Buckingham Trust implemented the Real Estate Transfers for the purpose of benefiting themselves by ensuring, among other things, that Dlorah's Real Estate would not be subject to collection and foreclosure by Dlorah's creditors.

98.     Moreover, Dlorah did not receive reasonably equivalent value in exchange for selling Dlorah's Real Estate to Park West, thereby providing an immediate and direct benefit to the members of Park West (Dlorah, Mr. Shape, and the Buckingham Trust).

99.     Dlorah, Mr. Shape, and the Buckingham Trust also benefited by this transaction since, as members of Park West, they have been able to continue to own and operate the apartment and condominiums and benefit from the income that is derived from that business.

100.    The Real Estate Transfers evidence numerous badges of fraud as identified in SDCL § 54-8A-4(b).

101.    The Real Estate Transfers were made to an insider, as Park West is currently owned by (1) Dlorah; (2) Dlorah's CEO Mr. Shape; and (3) the Buckingham Trust.

102.    The owners and members of Park West are all insiders as the various individuals and entities have held or currently hold leadership positions at Dlorah, and because Dlorah itself is a member of Park West.

103.    Following the closings on the Real Estate Transfers, Dlorah retained possession and control over Dlorah's Real Estate since Dlorah is a member of Park West, as is its CEO Mr. Shape.

104.    Neither Dlorah nor Park West disclosed the Real Estate Transfers to Plaintiff at or around the time period in which these transactions occurred.

105.    Before the Real Estate Transfers were entered into, both the Eviction Action and the Collections Lawsuit had been commenced against Dlorah.

106.    On information and belief, Dlorah's Real Estate was substantially all of Dlorah's collectible assets. Following the Real Estate Transfers, Dlorah's collectible assets and funds were de minimis.

17

107.   Dlorah has absconded and has removed and concealed its assets as set forth above.

108.   The total purchase price for the Real Estate Transfers was $11,080,000, despite the fact that the appraised value for the properties was $12,388,000, a difference of $1,308,000.

109.   Additionally, with respect to the 2020 Purchase Agreement, Dlorah and Park West entered into the sham Promissory Note that does not require Park West to pay to Dlorah any of the $2,080,000 that is owed until at least June 2024, if ever.

110.   For these reasons, the value of the consideration received by Dlorah was not reasonably equivalent to the value of Dlorah's Real Estate that was transferred.

111.   Dlorah was insolvent at the time it entered into the Real Estate Transfers, or was rendered insolvent by and following the Real Estate Transfers.

112.   To date, Dlorah has failed and refused to satisfy the Judgment.

113.   The Real Estate Transfers occurred after a substantial debt was incurred by Dlorah, mainly the accrual of past due rent, accelerated rent, and other amounts due under the Lease and which Plaintiff sought to recover as part of the Collections Lawsuit.

114.   The foregoing facts constitute a fraudulent transfer in violation of SDCL § 54-8A-4(a)(1).

115.   Park West is a recipient of an actual fraudulent transfer.

116.   Dlorah, Mr. Shape, and the Buckingham Trust, together with Park West, concocted and executed the scheme to transfer Dlorah's Real Estate to Park West, a transaction that directly benefited Dlorah, Mr. Shape, and the Buckingham Trust.   Thus, Dlorah, Mr. Shape, and the Buckingham Trust are entities and individuals for whose benefit the actual fraudulent transfer was made, and are actual and intended beneficiaries of the actual fraudulent transfer.

3529672.v2

117.    As a creditor of Dlorah, Plaintiff has standing to assert and recover on account of actual fraudulent transfer claims in accordance with the South Dakota Uniform Fraudulent Transfer Act.

118.    Accordingly, Plaintiff seeks any and all available remedies or relief to it under South Dakota's Uniform Fraudulent Transfer Act against Defendants Dlorah, Park West, Mr. Shape, and the Buckingham Trust.

**COUNT TWO**
**CONSTRUCTIVE FRAUDULENT TRANSFER AGAINST ALL DEFENDANTS**
**SDCL § 54-8A-4(a)(2) and § 54-8A-5(a)**

119.    Plaintiff repeats, restates and realleges the allegations of Paragraphs 1 through 118 of this Complaint as if fully set forth herein.

120.    As alleged above, Dlorah did not receive reasonably equivalent value for Dlorah's Real Estate as part of the Real Estate Transactions.

121.    By consummating the Real Estate Transactions, Dlorah entered into a transaction for which the remaining assets of Dlorah were unreasonably small in relation to the size of the transaction.

122.    Additionally, at the time of the Real Estate Transactions, Dlorah knew that it had debts – including the $2.8M+ liability sought in the Collections Lawsuit – and knew that following the Real Estate Transactions, Dlorah would not have the ability to pay the Judgment.

123.    The foregoing facts constitute a constructive fraudulent transfer in violation of SDCL § 54-8A-4(a)(2) and § 54-8A-5(a).

124.    Park West is a recipient of an actual fraudulent transfer.

125.    Dlorah, Mr. Shape, and the Buckingham Trust, together with Park West, concocted and executed the scheme to transfer Dlorah's Real Estate to Park West, a transaction that directly

3529672.v2

benefited Dlorah, Mr. Shape, and the Buckingham Trust.  Thus, Dlorah, Mr. Shape, and the Buckingham Trust are entities and individuals for whose benefit the constructive fraudulent transfer was made, and are actual and intended beneficiaries of the constructive fraudulent transfer.

126.    As a creditor of Dlorah, Plaintiff has standing to assert and recover on account of constructive fraudulent transfer claims in accordance with the South Dakota Uniform Fraudulent Transfer Act.

127.    Accordingly, Plaintiff seeks any and all available remedies or relief to it under South Dakota's Uniform Fraudulent Transfer Act against Defendants Dlorah, Park West, Mr. Shape, and the Buckingham Trust.

## COUNT THREE
## PIERCING THE CORPORATE VEIL AGAINST DLORAH AND PARK WEST

128.    Plaintiff repeats, restates and realleges the allegations of Paragraphs 1 through 127 of this Complaint as if fully set forth herein.

129.    There is a unity of interest and ownership between Dlorah and Park West such that the separate personalities of Dlorah and Park West are indistinct and non-existent.

130.    Park West is nothing more than the alter ego of Dlorah.

131.    Dlorah has used Park West to perpetuate its scheme to move and shield Dlorah's Real Estate from Dlorah's creditors, including Plaintiff.

132.    Adherence to the fiction of a separate corporate existence between Dlorah and Park West would sanction fraud, promote injustice, result in inequitable consequences, and lead to an evasion of Dlorah's legal obligations to Plaintiff.

133.    It would be unjust to continue to allow Dlorah and Park West to use each other to avoid liability.  Dlorah and Park West are alter egos of each other and their purported separate existence should be ignored in order to prevent an injustice to Plaintiff.

20

3529672.v2

134.    Accordingly, Plaintiff requests that the Court pierce the corporate veil and hold Dlorah and Park West jointly and severally liable for the acts of Dlorah, including the amount due pursuant to the Judgment in favor of Plaintiff.

## COUNT FOUR
## ATTORNEYS' FEES

135.    Plaintiff repeats, restates and realleges the allegations of Paragraphs 1 through 134 of this Complaint as if fully set forth herein.

136.    The Lease provides that "[i]n the event either party places the enforcement of this Lease Agreement, or any part hereof, or the collection of any rent due, or to become due hereunder, or recovery or possession of the Leased Premises, in the hands of an attorney, or files suit upon the same, the non-prevailing (or defaulting) party shall pay the other party's reasonable attorney's fees and court costs."

137.    As previously adjudicated in the Collections Lawsuit, Dlorah is in default of the Lease and has refused to satisfy the Judgment in full as of the date of this Complaint.

138.    Plaintiff has incurred and will continue to incur attorneys' fees and expenses in connection with its collection efforts, including but not limited to prosecuting this action against Defendants.

139.    Accordingly, Plaintiff requests that judgment be entered against Defendants for all attorneys' fees and costs incurred by Plaintiff in connection with this action.

**WHEREFORE**, Plaintiff demands judgment entered as follows:

1.    Any and all available remedies or relief available under South Dakota's Uniform Fraudulent Transfer Act, including, but not limited to:

(a) Avoidance of the Real Estate Transfers to the extent necessary to satisfy the Judgment;

21

3529672.v2

    (b)  An attachment or other provisional remedy against Dlorah's Real Estate;

    (c)  An injunction against further disposition by Dlorah and Park West of Dlorah's Real Estate;

    (d)  The appointment of a receiver to take charge of Dlorah's Real Estate; and

    (e)  Any other relief the circumstances may require;

2.    Payment of damages by all Defendants in an amount sufficient to satisfy Plaintiff's Judgment;

3.    An award of attorneys' fees, interests, and costs; and

4.    All such further relief as the Court deems necessary or proper.

Dated:  September 30, 2021

**DAVENPORT, EVANS, HURWITZ & SMITH, L.L.P**

By: _____

Joel Rische  #4605
206 West 14th Street
P.O. Box 1030
Sioux Falls, SD 57101-1030
Telephone: 605-336-2880
Fax: 605-335-3639
jrische@dehs.com

**FELHABER LARSON**
Scott D. Blake, #0395862 MN (*pro hac vice pending*)
220 South Sixth Street, Suite 2200
Minneapolis, Minnesota 55402
Telephone: 612-339-6321
Fax: 612-338-0535
sblake@felhaber.com

**ATTORNEYS FOR PLAINTIFF**

22

3529672.v2

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Minnesota Office Plaza LLC

**(b)** County of Residence of First Listed Plaintiff   Ramsey County, MN
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Joel Rische, Davenport Evans Hurwitz & Smith LLP, 206 W 14th Street, Sioux Falls, SD 57104, 605-336-2880

## DEFENDANTS

Dlorah, Inc., d/b/a National American University; Park West, LLC; Shape, Ronald; Buckingham, Robert, as Trustee of the

County of Residence of First Listed Defendant   Pennington County, SD
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
      Plaintiff

☐ 2  U.S. Government
      Defendant

☐ 3  Federal Question
      *(U.S. Government Not a Party)*

☒ 4  Diversity
      *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                     *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & | ☐ 367 Health Care/ Pharmaceutical | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | Slander | Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | ☐ 340 Marine | Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | ☐ 350 Motor Vehicle | ☒ 370 Other Fraud | **LABOR** | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | | (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | Product Liability | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original
     Proceeding

☐ 2 Removed from
     State Court

☐ 3 Remanded from
     Appellate Court

☐ 4 Reinstated or
     Reopened

☐ 5 Transferred from
     Another District
     *(specify)*

☐ 6 Multidistrict
     Litigation -
     Transfer

☐ 8 Multidistrict
     Litigation -
     Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. 1332

Brief description of cause:
Fraudulent transfer of property.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
    UNDER RULE 23, F.R.Cv.P.

DEMAND $
$2.8 Million

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE
September 30, 2021

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____